UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICCARDO GREEN,

          Plaintiff(s),

  v.

SEATTLE ART MUSEUM,

          Defendant(s).

NO. C07-58MJP

ORDER ON:
(1) DEFENDANT'S MOTION TO DISMISS CLAIMS
(2) PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendant's Motion to Dismiss Claims for Disparate Impact, Constructive Discharge, Breach of Contract, Defamation and Retaliation (Dkt. No. 7)

2. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Claims for Disparate Impact, Constructive Discharge, Breach of Contract, Defamation and Retaliation (Dkt. No. 10)

3. Reply in Support of Defendant's Motion to Dismiss Claims for Disparate Impact, Constructive Discharge, Breach of Contract, Defamation and Retaliation (Dkt. No. 14)

4. Plaintiff's Surreply to Defendant's Reply (Dkt. No. 16)

5. Plaintiff's Motion for Default Judgment (Dkt. No. 8)

6. Defendant's Opposition to Motion for Default Judgment (Dkt. No. 15)

7. Reply to Defendant's Opposition to Motion for Default (Dkt. No. 18)

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS ORDERED that Defendant's motion to dismiss claims is PARTIALLY GRANTED and PARTIALLY DENIED. Plaintiff's claims for constructive discharge, disparate impact and defamation are hereby DISMISSED.

**ORD ON MTNS - 1**

IT IS FURTHER ORDERED that Plaintiff's motion for default judgment is DENIED.

**Background**

Defendant Seattle Art Museum ("SAM") hired Plaintiff in May 2006 as a Visitor Service Officer, one of the security staff who protects the collections housed in the various SAM facilities. Defendant asserts that Plaintiff was provided with an orientation on May 10, at which he was advised of SAM's policies regarding such issues as tardiness, staying at an assigned post, and eating or drinking on the job. During the brief course of his employment, Defendant alleges a series of ongoing problems with Plaintiff's performance:

(1) *Tardiness*: Defendant claims Plaintiff was late for his assigned shift 18 out of 26 workdays;

(2) *Leaving his post*: on two occasions, Plaintiff is alleged to have left his assigned work location (a violation of SAM employee policy); and

(3) *Food/beverage in gallery*: Defendant claims two incidents of Plaintiff eating food in a gallery (no one is permitted food or drink in the galleries) and a final incident (on June 15, 2006) of walking through the galleries with a beverage.

Plaintiff was terminated from his employment with SAM on June 20, 2006.

For his part, Plaintiff alleges that he was not given an orientation nor ever warned about a tardiness problem. Further, he claims that he was harassed by supervisors and co-workers, discriminated against on the basis of his race and retaliated against when he complained. He filed an EEOC complaint following his termination and was given his right to sue notice in October 2006; he filed this complaint in January 2007. In it, he alleges a variety of causes of action, including retaliation, disparate treatment and impact, harassment, "wrongful constructive discharge" (Complaint, p. 24), "breach of contract discharge" (Complaint, p. 26), defamation of character, hostile work environment and "employment discrimination" (Complaint, p. 28).

**ORD ON MTNS - 2**

Defendant seeks 12(b)(6) dismissal of the following claims:

1. Disparate impact
2. Constructive discharge
3. Breach of contract
4. Defamation
5. Retaliation

Defendant also moves to strike Plaintiff's evidentiary attachments to his response in opposition. Plaintiff has moved for a default judgment on the grounds that Defendant has thus far failed to answer his complaint.

## Discussion

**Motion to Dismiss/Motion to Strike**

Standard of proof

For purposes of Defendant's motion, the Court must accept all "well-plead" facts as true. Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993). Further, the complaint must be construed in the light most favorable to Plaintiff, and it is the Court's duty to determine whether Plaintiff can prove *any* set of facts in support of his claim which would entitle him to relief. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38, (9th Cir. 1996). To the extent this is the case, Defendant cannot prevail.

These motions are generally disfavored (Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997)) and granted only in "extraordinary" circumstances. U.S. v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). The Court cannot consider material outside the complaint (unless it is referenced in the complaint); if extrinsic evidence were to be admitted, the motion is converted to a Rule 56 summary judgment motion and the parties are given an opportunity to submit further factual proof in keeping with that procedure. FRCP 12(b).

Disparate impact

**ORD ON MTNS - 3**

1  In his complaint, Plaintiff entitles his second cause of action "Disparate Treatment and
2  Impact." Complaint, p. 21.  A claim for "disparate impact" will only lie where a plaintiff alleges
3  "practices that are facially neutral in their treatment of different groups but that in fact fall more
4  harshly on one group than another and cannot be justified by business necessity."  Stout v. Potter, 276
5  F.3d 1118.  Nowhere in his complaint or his responsive pleadings does Plaintiff allege the existence of
6  a policy that is facially neutral but discriminatory in its impact.  Therefore, the Court finds no basis for
7  a disparate impact claim.

8  Defendant does not challenge Plaintiff's cause of action for disparate treatment by this motion,
9  and it will remain.

10 Constructive discharge

11 Constructive discharge results from an employer who intentionally creates an intolerable
12 working environment and thereby forces the employee to quit.  Bulaich v. AT&T Info Sys., 113
13 Wn.2d 254, 261 (1989).  Plaintiff did not quit but was involuntarily terminated and he does not
14 challenge Defendant's argument that there can be no constructive discharge claim under those
15 circumstances.  Defendant's motion to dismiss the constructive discharge claim is granted.

16 In fact, Plaintiff's original cause of action was entitled "Wrongful Constructive Discharge" and
17 Plaintiff presently has a separate motion pending before this Court (noted for July 20, 2007) to amend
18 his complaint to include a claim for "wrongful discharge."  Dkt. No. 23.

19 Breach of contract

20 Defendant argues that, as an at-will employee, Plaintiff had no contract with them and could be
21 terminated at any time with or without cause.  There is language in the Employee Handbook (a
22 document cited by Plaintiff in his complaint) that "[n]othing contained in this policy shall eliminate or
23 modify... the Museum's right to terminate the employment relationship at any time, for any reason,
24 with or without cause or notice."  Pltf Exh. at 23-24.

25

26 **ORD ON MTNS - 4**

1   However, there are Washington cases which hold that, under certain circumstances, an
2   employer may not rely on an "at-will" or "no contract" disclaimer in an employee handbook when an
3   employee may have reasonably relied on certain policies and procedures outlined in the handbook,
4   thus creating an implied contract. See Wlasiuk v. Whirlpool Corp., 81 Wn.App. 163, 172, (1996);
5   Kohn v. Georgia-Pacific Corp., 69 Wn.App. 709, 721 (1993). Plaintiff alleges the existence of
6   disciplinary and grievance policies and representations regarding his employer's obligation to respond
7   to and investigate complaints of harassment (*see* Pltf Exh at 22, 23, 27). At this stage of the
8   proceeding, Plaintiff has articulated sufficient facts. Viewing those facts in the light most favorable to
9   him precludes a finding that there is no set of circumstances under which he can sustain a breach of
10  contract claim. Defendant's motion will be denied in this regard.

11  Defamation

12  To establish a claim of defamation requires a showing that (1) Defendant uttered a false
13  statement, (2) the statement was unprivileged, (3) Defendant was at fault, and (4) the statement
14  proximately caused damages. Alpine Ind. Comp. v. Cowles Pub. Co., 114 Wn.App. 371, 378 (2002).
15  There can be no liability for defamation without proof of publication of the defamatory statement to a
16  third party. Pate v. Tyee Motor Inn, Inc., 77 Wn.2d 819, 821 (1970).

17  Plaintiff's complaint focuses on Defendant's response to his EEOC report, which he alleges
18  were false and damaging to his character. Complaint, pp. 26-27. However, as Defendant points out,
19  communications between Defendant and the EEOC are not actionable as defamation because SAM
20  had a right to respond to Plaintiff's complaint to the agency. "In a common law defamation action,
21  communications to a public officer who is authorized or privileged to act on the matter communicated
22  are qualifiedly privileged. A qualified privilege protects the maker from liability for an otherwise
23  defamatory statement unless it can be shown that the privilege was abused." Gilman v. McDonald, 74
24  Wn.App. 733, 738 (1993) (citations omitted).

25

26  **ORD ON MTNS - 5**

In his responsive briefing, Plaintiff switches focus to allegedly false accusations of theft in an e-mail between two SAM security personnel. Opposition Brief, pp. 21-22. It appears to the Court that Plaintiff has misread the communication (misapprehending the idiomatic phrase "took the cake," as in "Last Thursday though *took the cake*.") for an allegation that he stole something. The e-mail also refers to Plaintiff's unsatisfactory performance in the areas of tardiness, drinking beverages in the gallery and leaving his post, and Plaintiff appears to object to these and consider them defamatory. But Plaintiff does not deny that those events occurred; rather, he feels they were justified or excusable for various reasons and therefore improper grounds for being terminated.

In any event, this e-mail falls under a qualified "common interest" privilege recognized by Washington courts.

> The common interest privilege applies when the declarant and the recipient have a common interest in the subject matter of the communication. . . The comments to the Restatement suggest that the privilege is available generally for persons involved in the same organizations, partnerships, associations, or enterprises who are communicating on matters of common interest. Restatement [(Second) of Torts], *supra*, § 596 cmts. (d), (e) (*citations omitted*). . . These authorities suggest that the privilege arises when parties need to speak freely and openly about subjects of common organizational or pecuniary interest.

Moe v. Wise, 97 Wn.App. 950, 957-958 (1999). The privilege is "qualified" in the sense that it can be lost if the speaker publishes the statement with knowledge or reckless disregard of its falsity, but Plaintiff does not dispute that the incidents occurred, only whether he should have been terminated on account of them.

Plaintiff has failed to state a cause of action for defamation, and there is no set of facts based on the circumstances he describes which would support a claim for defamation. Defendant's motion to dismiss in this regard will be granted.

Retaliation

To establish a cause of action for retaliation, a plaintiff must show that (1) he/she engaged in a statutorily-protected activity; (2) an adverse employment action was taken; and (3) a causal link exists

**ORD ON MTNS - 6**

between the protected activity and the adverse action. <u>Cornwell v. Electra Central Credit Union</u>, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

Defendant challenges Plaintiff's complaint for "failing to identify any protected activity that he engaged in or any link between a protected activity and an adverse action." Motion, pp. 7-8. In fact, the complaint alleges quite clearly that "Plaintiff complained to his supervisors regarding racial and unfair treatment, racial ethnic slurs, hostile work environment, harassment, and employment discrimination in workplace and was ignored, denied and retaliated against." Complaint, p. 20. In his response, Plaintiff again states that he "made internal complaints to defendant in good faith. . . regarding unlawful discriminatory treatment..." Opposition Brief, p. 22.

Defendant then attacks Plaintiff's proof of his complaints as inadmissible and inadequate. The issue of the admissibility of the evidence submitted by Plaintiff is addressed below. For purposes of Plaintiff's FRCP 12(b) motion, it is irrelevant. The Court is required to accept all of Plaintiff's factual allegations as true, and draw the most favorable inferences therefrom. Plaintiff's factual allegations regarding his complaints of discriminatory treatment describe protected activity (complaints concerning alleged discrimination) and raise a sufficient question of causality related to his termination to survive a 12(b)(6) motion. Defendant's motion to dismiss the retaliation claim will be denied.

<u>Motion to strike</u>

Plaintiff attached 521 pages of documents to his opposition brief. Defendant has moved to strike them as unauthenticated and therefore inadmissible. The museum cites to Ninth Circuit authority that unauthenticated documents cannot properly be considered in a motion to dismiss or a motion for summary judgment. <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988). Authentication is a "condition precedent to admissibility" which is met by presentation of "evidence sufficient to support a finding that the matter in question is what its proponent claims." <u>Id</u>. at 1182.

**ORD ON MTNS - 7**

1     While Defendant's authority and reasoning are on point, the Court does not find them timely.

2 Since the Court must accept Plaintiff's factual allegations as true in a 12(b) motion, the admissibility or

3 non-admissibility of his evidence is not at issue. To the extent that evidence has been submitted which

4 is outside the scope of the complaint, the Court declines to either consider it or convert this

5 proceeding to a summary judgment motion.

6     However, it is not too early in the litigation to caution Plaintiff about conforming to the rules

7 of evidence and civil procedure in submitting declarations and documents. Although Plaintiff is

8 representing himself pro se, he is a seasoned litigator (this lawsuit being one of twelve he has filed in

9 this district since 2004) and he will be expected to be familiar with and conform to the same standards

10 of practice as any other litigator appearing this Court. Defendant's objections to Plaintiff's evidence,

11 while not well-timed, are nevertheless well-taken and Plaintiff should consider this fair warning that his

12 future submissions will be subject to the same scrutiny as anyone else prosecuting a civil action in

13 federal court.

14     Additionally, if Plaintiff continues to submit evidence in the excessive volume that he has

15 demonstrated in this case, he will be expected to organize the material in an understandable and

16 accessible form. The use of tables of contents and lettered or numbered tabs is highly encouraged.

17 **Motion for Default Judgment**

18     Plaintiff moves for default on the grounds that Defendant has not filed an answer to his

19 complaint in the time required by the rules of civil procedure. He argues, incorrectly, that Defendant's

20 motion to dismiss does not constitute a response and therefore Defendant is in default.

21     A motion for default will not lie where a party has answered <u>or</u> "otherwise defended" against

22 the complaint. FRCP 55(a). A motion to dismiss constitutes properly defending an action in federal

23 court.

24         Fed.R.Civ.P. 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* as provided by these rules and
25         that fact has been made to appear by affidavit or otherwise, the clerk shall enter the

26 **ORD ON MTNS - 8**

party's default." (emphasis added). Through its motion to dismiss, the [defendant] has "otherwise defend[ed]" in response to plaintiff's Complaint.

Fidelity Mortg. Corp. v. Seattle Times Co., 213 F.R.D. 573, 574 (W.D.Wash. 2003) (emphasis in original). The Court also notes the rule at FRCP 12(a)(4): if a motion is filed pursuant to Rule 12, the time period allotted for a responsive pleading is altered and such responsive pleadings "shall be served within 10 days after notice of the court action" on the motion.

Defendant also notes that Plaintiff failed to provide them with the five days' written notice of his intent to file a motion for default required by Rule 55 of the Local Rules once they have made an appearance. On both procedural and substantive grounds, Plaintiff's motion is denied.

## Conclusion

Plaintiff has failed to state a claim upon which relief can be granted in his causes of action for discrimination on the grounds of disparate impact, constructive discharge and defamation. Defendant's motion to dismiss those claims will be GRANTED. Defendant's motion to dismiss will be otherwise denied, as will their motion to strike Plaintiff's evidentiary submissions.

Plaintiff's motion for default judgment is not well-taken and will also be DENIED.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: June __29_, 2007

Marsha J. Pechman
U.S. District Judge

ORD ON MTNS - 9

Case 2:07-cv-00058-MJP   Document 24   Filed 06/29/07   Page 10 of 10