UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICCARDO GREEN,<br><br>        Plaintiff,<br><br>   v.<br><br>SEATTLE ART MUSEUM,<br><br>        Defendant. | Case No. C07-0058MJP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's motion for summary judgment and Defendant Seattle Art Museum's cross-motion for summary judgment. (Dkt. Nos. 103 & 120.) Having considered the motion and cross-motion, both parties' replies (Dkt. Nos. 124 & 132), all documents timely submitted in support thereof and the balance of the record, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**Background**

Plaintiff's claims arise from his termination from employment at the Seattle Art Museum ("the Museum"). The following facts related to Plaintiff's employment are not in dispute. The Museum employs an extensive security staff at its various locations to protect its artwork. (Klein Decl. ¶ 3.) Visitor Security Officers ("VSOs") provide protection for Museum artwork and ensure patron safety by monitoring visitor behavior from set "posts." (Id. ¶ 4.) Plaintiff Riccardo Green was employed by the Museum as a VSO for about six weeks in May and June of 2006. (Id. ¶ 7; Green Dep. 54:4-8.) Mr. Green is part Filipino, Mongolian, Jamaican, and Native American.

ORDER — 1

1  (Compl. ¶ 90.) Before starting his security officer duties, Plaintiff attended a one-day orientation
2  at which he received a copy of the Museum Employee Handbook and other Museum policies.
3  (Klein Decl. ¶ 8 & Ex. 2-7; Green Dep. 98:17–100:5.) Mr. Green acknowledged receipt of the
4  Employee Handbook and other policies with his signature. (Klein Decl., Exs. 8-10.)  At his
5  deposition, Mr. Green admitted that he knew at the time of his employment that (a) employees
6  were expected to arrive at work on time, (b) Museum rules included no eating or drinking in the
7  galleries, and ©) VSOs were required to remain at their posts at all times. (Green Dep. 111:4-6,
8  117:8-11, 125:25– 126:7.) Despite his knowledge of these rules, Mr. Green admits that he was
9  repeatedly late to work (Klein Decl., Ex. 11; Green Dep. 104:14-25), he drank water in the
10 galleries (Green Dep. 119:3–120:9), and he left his security post at least once (Green Dep. 126:4-
11 21).[1] Defendant offers evidence showing, and Mr. Green does not dispute, that he was late for 18
12 out of 26 of his assigned shifts. (Klein Decl. ¶ 10.) Defendants have included in their materials
13 "Staff Absence Reports" that document Mr. Green's tardiness on four of the eighteen occasions
14 he was late. (Klein Decl., Ex. 11.) On each of those occasions, Mr. Green was more than 30
15 minutes late for his shift. (Id.) One of the reports indicates that Mr. Green was informed that his
16 tardiness was a "problem" that "needs to be resolved." (Id., at 112.) Another report indicates that
17 Mr. Green called before his shift started to let his supervisor know that he would be late. (Id., at
18 113.) On June 20, 2006, without first providing Plaintiff with any written warnings, the Museum
19 terminated Mr. Green's employment.

20      Many of Mr. Green's complaints relate to the late issuance of his security identification
21 badge, the Museum's failure to provide him with computer access, and alleged harassment from
22 other VSOs and supervisors. Apparently, the Museum was slow to issue Mr. Green's security
23 badge; other VSOs who started at the same time as him received badges more quickly. (Klein
24 Decl., Ex. 15; Green Dep. 114:24–115:11.) The Museum did not provide Mr. Green with access

---

26  [1]   Defendant alleges, but Plaintiff disputes, that Mr. Green also ate lollipops in the
27 galleries (Klein Decl. ¶ 12) and left his post on an additional occasion (id. ¶ 11).

ORDER — 2

to the Museum computer system. (Green Dep. 112:12-14.)  In terms of his interactions with other employees, on one morning when he arrived to work but was not scheduled to work, Mr. Green overheard one supervisor say to another employee that the employee should "just slap Riccardo." (Green Dep. 122:11-19.)  Another supervisor, David Scalzo, frustrated with Mr. Green, yelled at him and stated that he would "keep [Mr. Green] in the south." (Green Dep. 122:20–123:6.)  On several occasions, a co-worker looked at her watch when Mr. Green came back from taking a break. (Green Dep. 123:17-20.)  And another VSO told Mr. Green when he was supposed to take his breaks and lunches. (Green Dep. 124:10-15.)  Mr. Green also alleges that he was not given the same human resources ("HR") or supervisor contact information that other VSOs were given.

Following his termination, Plaintiff filed this lawsuit, alleging employment discrimination, disparate treatment and impact, harassment, wrongful constructive discharge, defamation of character, breach of contract, hostile work environment, and retaliation, and seeking, among other things, one hundred billion dollars in damages. (Dkt. No. 1.)  On June 29, 2007, the Court dismissed Plaintiff's claims for constructive discharge, disparate impact, and defamation. (Dkt. No. 24.)  Plaintiff then amended his complaint to include a wrongful discharge claim. (Dkt. No. 27.)  Both parties now move for summary judgment on all remaining claims.

## Discussion

### I. Summary Judgment Standard

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the

ORDER — 3

nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Catrett, 477 U.S. at 325.  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).  Where, as here, the parties have cross-moved for summary judgment, the Court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." ACLU v. City of Las Vegas, 466 F.3d 784, 790-91 (9th Cir. 2006).

## II.     Threshold Issues — Motion to Strike & Materials to be Considered

### A.     Motion to Strike

Mr. Green moves to strike the declaration of Paul Klein, arguing that Mr. Klein's statements are hearsay, defamatory, inadmissible, not based on personal knowledge, and contradictory to his deposition testimony.  Mr. Green does not identify which particular statements in Mr. Klein's five page declaration should be stricken.  The Court will not strike wholesale the declaration without a more specific objection.  To the extent the Court relies on Mr. Klein's declaration, it will not consider any statements therein that violate any of the applicable evidentiary rules.

### B.     Appropriate materials

Throughout his motion and reply, Mr. Green states that he "reasserts" all material facts, all referenced exhibits in the original and amended complaint, all evidence filed on record, all deposition examination testimonies of party and nonparty witnesses filed, all affidavits filed, all pleadings filed, all exhibits filed, all supplemental declarations under oath filed, all declarations under oath filed, parties' answers to interrogatories, plaintiff's brief in opposition to defendant's motion to dismiss claims, and plaintiff's motion for summary judgment. (Plf.'s Mot. at 3, 5, 6-7, 13; Plf.'s Reply at 4, 5, 6, 7, 8, 9, 10.)  Plaintiff also "reasserts . . . plaintiff's responses [under seal] regarding breach of contract." (Plf.'s Reply at 7.)  The district court is not obligated to

ORDER — 4

search the record for material facts and "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record <u>specifically referenced therein</u>." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001) (emphasis added). The Court will not comb through the hundreds of pages of documents in this record to see whether any of the documents raise an issue of material fact. And the Court will not scour the deposition transcripts filed, but will only consider those portions of the transcripts that have been specifically referenced in the briefs. The Court will look only to those portions of exhibits, declarations, and deposition transcripts cited by the parties in their motions and responses. As the Court recently explained in a separate case involving the same Plaintiff,

> [A] party moving for summary judgment is not allowed to provide rolling filings of evidence to support its motion. The Court will not consider any evidence in the record when analyzing a party's summary judgment brief unless (1) that evidence is presented before or at the same time as the filing of the motion or response, so that it is in the record for the other party to consider, and (2) the party offering the evidence points to that evidence in his motion or response and provides a record citation so that the Court may easily find the evidence.

Green v. Am. Commercial Security Servs., C07-1837MJP (May 12, 2008, Order Denying Plf.'s Mot. for Reconsideration).

**III.   Individual Causes of Action**

The Court considers each of Mr. Green's causes of action in turn.

**A.   Race Discrimination / Disparate Treatment**

Mr. Green's Title VII race discrimination / disparate treatment claim is governed by the well-established "prima facie case and burden-shifting paradigm" set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] See Costa v. Desert Palace, 299 F.3d 838, 854 (9th Cir. 2002). A plaintiff asserting a Title VII unlawful discrimination claim must first make out a prima facie case of discrimination. If the plaintiff succeeds in making out such a case, "then the burden

---

[2] Although Mr. Green lists these as two separate causes of action in his complaint, his other papers give the Court no reason to separate them. Indeed, in his opening motion, Mr. Green only mentions his "race discrimination" claim, and not a separate "disparate treatment" claim. Mr. Green also offers no evidence supporting a separate "employment discrimination" claim.

ORDER — 5

shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination." <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640 (9th Cir. 2003).  To establish a prima facie case of unlawful employment discrimination, a plaintiff must offer evidence that "gives rise to an inference of unlawful discrimination" either through the elements articulated in <u>McDonnell Douglas</u> or by more direct evidence of discriminatory intent. <u>See</u> <u>id.</u>; <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148-49 (9th Cir. 1997).  Under <u>McDonnell Douglas</u>, a prima facie case is made if a plaintiff can show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with similar qualifications were treated more favorably. <u>Vasquez</u>, 349 F.3d at 640 n.5 (citing <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802).

       Mr. Green has offered no direct evidence of discriminatory intent.  "Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" <u>Id.</u> (quoting <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998)). The only evidence that even comes close is evidence that David Scalzo, a supervisor, yelled at Mr. Green and said "I'll keep you in the South."  But Plaintiff alleges in his own complaint that he was standing at the time in the <u>south gallery</u> of the Museum. (Am. Comp. ¶ 34.)  Moreover, Mr. Scalzo was not the person who decided to terminate Mr. Green, and Mr. Green has not attributed any discriminatory remarks to the any of the decision-makers or suggested a nexus between Mr. Scalzo's remarks and the decision to terminate him.[3] <u>See</u> <u>Vasquez</u>, 349 F.3d at 640.  Therefore, this comment, standing alone, does not directly prove discriminatory animus, nor does it provide sufficient circumstantial evidence of discriminatory intent.  None of the other statements that Mr.

---

[3] Paul Klein and Brandon Weathers made the decision to terminate Mr. Green after Mr. Klein emailed Mr. Weathers, Ian Schooley, and Cyrus Ghiasvand, complaining that Mr. Green was repeatedly tardy, took a beverage into the gallery, and left his post during one of his shifts. (Klein Decl., Ex. 14.)

ORDER — 6

1   Green points to provide direct or circumstantial evidence of discriminatory animus. Because he
2   cannot show discriminatory intent directly, the Court considers Mr. Green's claim through the
3   McDonnell Douglas framework.

4       Even assuming Plaintiff could satisfy the four-prong McDonnell Douglas test, he cannot
5   establish that the Museum's non-discriminatory reason for firing him is pretextual. The Museum
6   offers a legitimate, non-discriminatory reason for terminating Mr. Green's employment: Mr.
7   Green does not dispute that he was repeatedly tardy, drank water in the gallery, and left his post,
8   all in violation of known employee rules. The burden now shifts back to Mr. Green to show
9   pretext: "a plaintiff can show pretext directly, by showing that discrimination more likely
10  motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of
11  credence." Vasquez, 349 F.3d at 641. Any circumstantial evidence of pretext must be "specific
12  and substantial" to survive summary judgment. Brown v. City of Tucson, 336 F.3d 1181, 1188
13  (9th Cir. 2003). The only evidence Mr. Green points to is evidence that another VSO — Ricky
14  Buchanan, a white male who was hired around the time that Mr. Green was fired and had lesser
15  qualifications and experience as a security officer and had less education than Mr. Green —
16  received better treatment than Mr. Green. (Plf.'s Mot. at 3-4; Plf.'s Reply at 6-7.) A showing that
17  an employer treated similarly situated employees outside the plaintiff's protected class more
18  favorably can be probative of pretext. See Vasquez, 349 F.3d at 641. In Mr. Buchanan's
19  deposition, he states that he received Supervisor Schooley's contact information (which Mr.
20  Green apparently did not), that he received his security badge within two weeks of starting his
21  employment (which Mr. Green received in five to six weeks), that he was paid around $9.45 an
22  hour (Mr. Green was paid less than $9 an hour), and that he received a buss pass (which Mr.
23  Green apparently did not). (Buchanan Dep. at 41:11-19, 34:14-19, 23:24–24:2, 10:6-7.) None of
24  these differences in treatment, even if true, are not probative of discriminatory intent. Mr. Green
25  has not shown that Mr. Buchanan, or any female or other white employee, was repeatedly late,
26  ate or drank in the galleries, and left his or her post. Without a comparator of that sort, any

ORDER — 7

differences in treatment do not raise an inference that Mr. Green's termination, based on these violations of Museum policy, were based on race or any other unlawful reason. See Vasquez, 349 F.3d at 641. Not only has Mr. Green failed to prove his race discrimination claim, he has not even raised an issue of material fact on this disparate claim. Summary judgment in favor of the Museum is therefore appropriate on the race discrimination / disparate treatment claims.

### B.     Wrongful Discharge in Violation of Public Policy policy

To establish a prima facie case of wrongful discharge under Washington law, four elements must be shown:

> (1) The plaintiffs must prove the existence of a clear public policy (the     clarity element);
>
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element);
>
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element);
>
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).

Gardner v. Loomis Armored Inc., 128 Wn.2d 931, 941 (1996). The employee has the burden of identifying the clear public policy and showing that his or her discharge violated that policy. Id. At the outset, Mr. Green's wrongful discharge claim fails because he has not identified any public policy implicated by his termination. Indeed, neither his motion nor his reply even mention this claim, indicating that he has abandoned it. See Local Civil Rule 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). And even if the Court were to consider all the evidence presented with these cross-motions and construe all facts in favor of Mr. Green, no issues of material fact have been raised on this claim. For the same reasons discussed regarding his disparate treatment claim, Mr. Green cannot show that an unlawful, rather than a legitimate, lawful, reason motivated his termination. The Court therefore grants summary judgment to Defendant and denies summary

ORDER — 8

1 judgment to Plaintiff on this claim.

### C. Retaliation

Title VII prohibits employers from discriminating against an employee because he has "opposed" practices that Title VII forbids or because he has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." Szymanski v. County of Cook, 468 F.3d 1027, 1029 (7th Cir. 2006) (quoting 42 U.S.C. § 2000e-3(a)). The provision protects against "materially adverse nonemployment-related discriminatory actions that might dissuade a reasonable employee from lodging a discrimination charge." Id. (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006)). To establish a claim of retaliation, a plaintiff must show (1) that he engaged in protected activity, (2) that the employer subjected the employee to an adverse employment action, and (3) that a causal link exists between the protected activity and the adverse action. Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).

Mr. Green cannot succeed on a retaliation claim because he cannot show that participation in any protected activity motivated his termination. The only specific alleged fact that Mr. Green points to as supporting this claim is his assertion that "Defendant failed to follow its company policies and procedures regarding employee internal grievances and discrimination complaints." (Plf.'s Reply at 8.) Mr. Green sent several e-mails to Museum staff regarding his security badge and his discussion with his co-worker regarding his lunch breaks. (Klein Decl., Ex. 15.) In the first of those e-mails, which was addressed to no one in particular, Mr. Green documents his shift availability, informs the e-mail recipient that he has not received his VSO badge, and mentions that two new Caucasian VSOs already have their badges. (Id.) In the second e-mail, Mr. Green documents that he told a supervisor about his Caucasian female co-worker's comments to him regarding his lunch hours and breaks. (Id.) He states that he "felt her comments to be very rude comments to me in the north gallery directed at me due to my race and gender and harassing." (Id.) He also documents that she received her badge before him and that he is concerned that he has not received his badge because the Museum is going to fire him. (Id.) Even if these e-mails

ORDER — 9

1 implicate activities protected under Title VII, Mr. Green sent these e-mails to a general HR
2 recruiting folder where they sat <u>unread</u> until <u>after</u> the Museum had decided to terminate him.[4]
3 Thus, they cannot be the cause of his termination.  Because he has not raised an issue of material
4 fact suggesting that the Museum fired him in retaliation for engaging in protected activity, the
5 Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for
6 summary judgment on this claim.

7       **D.**    **Hostile Work Environment**

8       To establish a prima facie hostile work environment claim, Mr. Green must raise a triable
9 issue of fact as to whether (1) he was subjected to verbal or physical conduct because of his race,
10 (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter
11 the conditions of his employment and create an abusive work environment. <u>Manatt v. Bank of</u>
12 <u>Am.</u>, 339 F.3d 792, 798 (9th Cir. 2003).  The proscription against hostile work environments is
13 not a "general civility code": "[s]imple teasing, offhand comments, and isolated incidents (unless
14 extremely serious) will not amount to discriminatory changes in the 'terms and conditions of
15 employment.'" <u>Id.</u> (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)).  To rise
16 to the level of creating a hostile work environment, the complained of conduct must be both
17 objectively and subjectively offensive. <u>Id.</u> at 799 n.6(holding that co-workers' jokes about a
18 "China man," teasing based on word mispronunciation, and gesture in which they pulled their eyes
19 back to mock the appearance of Asians were not enough to create hostile work environment); <u>see</u>
20 <u>also</u> <u>Vasquez</u>, 349 F.3d at 642 (holding that supervisor's isolated comments that plaintiff had a
21 "typical Hispanic macho attitude" and that he should consider transferring because "Hispanics do
22 good in the field" were not severe or pervasive enough to alter the terms and conditions of

---

[4] Mr. Green sent both of the e-mails discussed above to the "SAM Human Resources" e-mail address. (Klein Decl., Ex. 15.)  This was apparently a "recruiting" e-mail address that was not routinely checked. (<u>Id.</u>)  On June 19, 2006, at 6:10 p.m., Mr. Schooley sent an e-mail to other Museum supervisors and HR personnel that stated that Mr. Schooley had just found the e-mails Mr. Green had sent to the recruiting folder. (<u>Id.</u>; <u>see also</u> Second Schooley Dep. 12:10–14:9.)  Mr. Klein and Mr. Weathers had already decided to terminate Mr. Green earlier that day. (<u>Id.</u>, Ex. 14.)

ORDER — 10

employment). The Court must consider the totality of the circumstances in determining whether the plaintiff has made out a viable claim. Brooks v. City of San Mateo, 229 F.3d 917, 926 (9th Cir. 2000) (noting that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct").

The allegedly harassing conduct here was neither severe or pervasive. In his deposition, Mr. Green identified four incidents that form the basis of his hostile work environment claim: (1) his colleague's comment to him regarding the times and frequency of his breaks; (2) Mr. Klein's comment to another employee, Jim Parsons, that Mr. Parsons "should slap Riccardo"; (3) Mr. Scalzo's statement that he would "keep [Mr. Green] in the south"; and (4) a fellow VSO's gesture of looking at her watch when Mr. Green returned from his break. None of these incidents are objectively offensive. The first, second, and fourth incidents do not even relate to race, gender, color, or national origin. And even construing Mr. Scalzo's comment in the light most favorable to Mr. Green (i.e., assuming that Mr. Scalzo was making a racially offensive remark), this single isolated comment could not have altered the condition of Mr. Green's employment. Mr. Green never even reported this comment to any of his superiors or to Human Resources. (Green Dep. 140:24–141:15.) Mr. Green has failed to raise an issue of material fact on his hostile work environment claim.[5] The Court therefore grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment on this claim.

### E. Breach of Contract

Mr. Green does not raise this claim in his briefing, and so appears to have abandoned it. Local CR 7(b)(2). Regardless, this claim must fail because Mr. Green cannot identify a written or oral contract that altered the at-will status of his employment. In order to prevail on a breach of contract claim, a plaintiff must show that a valid contract exists, that the defendant breached that

---

[5] Mr. Green's reply brief contains a section on "harassment," which the Court assumes to be his hostile work environment claim. He points to no facts supporting a harassment claim separate from the hostile work environment claim.

ORDER — 11

contract, and that plaintiff was damaged as a result. <u>Lehrer v. Dept. of Social & Health Servs.</u>, 101 Wn. App. 509, 516 (2000). Mr. Green was an at-will employee who could be terminated for any reason, with or without cause. (Green Dep. 191:15-23; Klein Decl., Ex.2, at 22.) In his deposition, Mr. Green suggested that the Employee Handbook and Employment Policies formed the basis of his breach of contract claim. (Green Dep. 194:9-24, 195:12–196:8.) Under Washington law, an employment manual that contains a promise of specific treatment in specific situations may create a binding contract that supercedes an employee's at-will status. <u>Thompson v. St. Regis Paper Co.</u>, 102 Wn.2d 219, 233 (1984). But Mr. Green fails to point to any promise that he would not be terminated for excessive lateness or other policy violations. Indeed, the Employee Handbook actually provides that failure to follow museum rules and excessive tardiness are subject to discipline, up to and including termination. (Klein Decl., Ex. 2, at 22.) The Handbook does not required the Museum to use progressive discipline when an employee's "performance, work habits, overall attitude, conduct, [or] demeanor become unsatisfactory in the judgment of the Museum, based on violation either of the above [guidelines] or of any other Museum policies, rules or regulations." (<u>Id.</u>) Thus, the Museum broke no promises when it terminated Mr. Green for excessive tardiness without giving him written warnings beforehand. Summary judgment on this claim is therefore granted in favor of Defendant.

**Conclusion**

The Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment. Defendant has shown an absence of issues of material fact on each and every one of Mr. Green's discrimination claims. Mr. Green has failed to substantiate his conclusory allegations of unlawful discrimination. Because no reasonable jury could find in favor of him on any of his claims, summary judgment is appropriate.

//

//

//

ORDER — 12

The clerk is directed to send copies of this order to counsel and Mr. Green, and to immediately enter judgment in this matter.

Dated: May 22nd, 2008.

Marsha J. Pechman
United States District Judge

ORDER — 13